to compensation, and so on—but generally the preliminary conference must be had, and the disclosures made are within the spirit of the immunity. The fair and reasonable operation of the admitted general rule requires that liberality of construction.

The sentences of both Moy and Hee are reversed, and the cause is remanded for a new trial.

---

### LAMAR–WELLS CO. v. HAMILTON CO. et al.

(Circuit Court of Appeals, Fifth Circuit. November 20, 1916.)

No. 2919.

1. SUNDAY ☞30(3)—OFFICIAL ACTS—PETITION—SERVICE.

   Service of subpœna and copy of a petition may be made on Sunday in an involuntary bankruptcy proceeding.

   [Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 75–78; Dec. Dig. ☞30(3).]

2. BANKRUPTCY ☞86—PROCEEDINGS—SERVICE.

   In an involuntary bankruptcy proceeding against a corporation, service of subpœna and copy of petition was made on one named as president of the corporation. At the time of service such person was no longer president of the corporation, though he was a stockholder and director. The subpœna and petition were delivered to the president, and the stockholders adopted a resolution conferring on the president power to use his best judgment as to the proceedings. When the bankruptcy matter was called for hearing, and the corporation was adjudicated a bankrupt, the president was in attendance and made no objections as to the mode of service or the adjudication. *Held*, that the service on the director and stockholder, who referred the matter to the president, was sufficient to warrant the court in assuming jurisdiction, adjudicating the corporation a bankrupt, and appointing a receiver for its property.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 130; Dec. Dig. ☞86.]

3. APPEARANCE ☞24(5)—DEFECTS IN SERVICE—WAIVER.

   In such case, the corporation, by reason of the failure of its president to object, acquiesced in the mode of service, and is estopped from subsequently attacking the process.

   [Ed. Note.—For other cases, see Appearance, Cent. Dig. § 126; Dec. Dig. ☞24(5).]

Petition to Superintend and Revise from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

In the matter of the Lamar-Wells Company, alleged bankrupt. On petition of the Hamilton Company and others, the Lamar-Wells Company was adjudicated a bankrupt, and it petitions to superintend and revise a decree of the District Court. Petition denied.

The following is the opinion of Meek, District Judge:

It appearing to the court that the Lamar-Wells Company, in the above-entitled cause, had prepared and filed in this court a request for findings of fact and conclusions of law by the court, the following findings of fact and conclusions of law are made herein.

### Findings of Fact.

On January 14, 1916, the Hamilton Company, of Dallas, Tex., American Art Works Company of New Jersey, and J. J. Moran, of Dallas, Tex., credi-

tors of the Lamar-Wells Company, through their Attorneys, Davis, Johnson & Golden, of Dallas, filed an involuntary petition in bankruptcy against the Lamar-Wells Company, a corporation, in the District Court of the United States for the Northern District of Texas, at Ft. Worth.

(2) Subpœna was issued by the clerk of the United States District Court for the Northern District of Texas and placed in the hands of a deputy United States marshal, commanding the Lamar-Wells Company, a corporation, J. I. Campbell, president, to appear and answer said petition in bankruptcy on the 29th day of January, A. D. 1916, which subpœna was duly served by the deputy marshal on Sunday January 16, 1916, by delivering to the said J. I. Campbell a copy of said subpœna on a railroad train between Ft. Worth, Tex., and Mineral Wells, Tex., in said Northern district.

(3) Said J. I. Campbell, upon whom subpœna was served, had continuously been president of the Lamar-Wells Company from the time of its organization to November 11, 1915. On that date, to wit, November 11, 1915, Otis Malcolm was elected president of said company, and was president of same at time of service of said subpœna upon J. I. Campbell. At the time of the service of the subpœna on J. I. Campbell, said Campbell was a member of the board of directors and stockholder in said company.

(4) J. I. Campbell, after being served with subpœna as president of the Lamar-Wells Company, and upon the day and date of such service, delivered the said subpœna to said Otis Malcolm, president of said company, at the building occupied by the Lamar-Wells Company in Mineral Wells, Tex., and said president, Otis Malcolm, on and after the date of such service, to wit, January 16, 1916, was advised of the nature of the action brought, and of the date set for the hearing of same.

(5) That on the 21st day of January, 1916, Otis Malcolm, acting as president of the Lamar-Wells Company, called a meeting of the directors of said company, for the purpose of considering the action to be taken by the company in regard to the bankruptcy proceedings filed against it, at which meeting a motion was duly adopted not to resist the bankruptcy proceedings.

(6) That on or before January 29, 1916, appearance day fixed by said subpœna served upon the said J. I. Campbell, as president, the Coshocton Glass Company, a corporation, and a creditor of the Lamar-Wells Company, filed exceptions to said involuntary petition in bankruptcy, as filed upon application, and a hearing of these exceptions was set down for February 11, 1916, at Dallas, Tex.

(7) That on February 7, 1916, a called meeting of the directors and stockholders of the Lamar-Wells Company was held by order of its president, Otis Malcolm, at which meeting a motion was duly made and adopted in the following form, to wit: "To use best judgment as to proceedings against the bankruptcy filed against the company and to withdraw the former motion made to not resist the bankrupt proceedings." The president testified that the course to be pursued in this matter was left to his judgment by the board of directors.

(8) That on February 9, 1916, notice was served upon the Lamar-Wells Company, by serving Otis Malcolm, its president, that on February 11, 1916, at 10 o'clock a. m., in the city of Dallas, Tex., before the judge of the United States District Court for the Northern District of Texas, there would be called for hearing and disposition the following matter, to wit: (1) Demurrers filed by McGown & McGown, attorneys for the Coshocton Glass Company; (2) the application and petition of the petitioning creditors, seeking to have a receiver for the properties of said company appointed; and (3) the matter of adjudication of the Lamar-Wells Company, a bankrupt. In response to said notice Otis Malcolm, president of the Lamar-Wells Company, attended the hearings before the judge at Dallas, February 11, 1916, and was in the courtroom, and was in consultation and communication with George Q. McGown, attorney for Coshocton Glass Company, during the progress of said hearings; that Attorney George Q. McGown presented his exceptions and demurrers to the petition filed by the petitioning creditors, which exceptions were by the court overruled. Whereupon petitioning creditors asked that the matter of adjudicating the Lamar-Wells Company a bankrupt be considered. This was done. Otis Malcolm, president of the Lamar-Wells Company, was in the

courtroom at the time and heard the proceedings taken in the premises. It being made to appear that the subpœna had been issued, served, and returned into court, and that no answer had been filed by the alleged bankrupt, and that the time within which it might answer had expired, the court thereupon signed an order adjudicating the Lamar-Wells Company a bankrupt upon the involuntary petition of said three creditors aforementioned. At no time during this proceeding did Otis Malcolm, the president of the Lamar-Wells Company, though present and hearing the various steps taken in said proceedings, suggest in any way that the service had upon the company, as shown by the return made by the marshal, upon J. I. Campbell, as president, did not speak the truth, or that at said time said J. I. Campbell was not president of the alleged bankrupt company, and that he, Otis Malcolm, was then president. The said Otis Malcolm did not suggest to the court that he was not present for the purpose of entering his appearance on behalf of the company at that time. Further proceedings were had in the presence and hearing of the said Otis Malcolm as follows: Application for the appointment of a receiver was presented by the attorneys for the petitioning creditors, which said application was by the court granted. The court asked that the name of a proper person for appointment as receiver be suggested. Thereupon the name of Glen S. Johnson, of Mineral Wells, was proposed, and the court, being satisfied that said Johnson was a competent and proper person, thereupon appointed him receiver of the properties and assets of the bankrupt corporation.

(9) That on February 16, 1916, the Lamar-Wells Company filed a motion to vacate said order adjudicating it a bankrupt, and to quash the officer's return upon the subpœna, showing that the Lamar-Wells Company had been served by serving J. I. Campbell as president of said Lamar-Wells Company, when he was not in fact president, and further showing that the service was had on a Sunday.

(10) The petitioning creditors, named herein, answered the motion of the Lamar-Wells Company to vacate the orders of adjudication and reference, setting up the matters and things hereinabove stated; that is, that Otis Malcolm was present in court when the orders of adjudication and reference were made; that the Lamar-Wells Company had actual knowledge of said petition being filed, and that J. I. Campbell, a former president of the company had been served; and that the said J. I. Campbell was in fact at the time of said service upon him a director and stockholder in said company.

(11) The petitioning creditors further answered, upon oath made on information and belief, that the Lamar-Wells Company was not resisting bankruptcy proceedings, but that resistance was being urged by creditors of the Lamar-Wells Company, in its name; that after the petition was filed certain properties of the Lamar-Wells Company had been sold under execution and bid in by stockholders; and that after the petition was filed property of the value of $12,000 was transferred by the Lamar-Wells Company to one of its stockholders. The defendant interposed exceptions to this answer, which were overruled by the court. After the petition was filed on January 14, 1916, some of the property of the Lamar-Wells Company was sold under execution issued out of a state court, and also property of the value of about $12,000 was sold and transferred by the Lamar-Wells Company to one of its stockholders.

(12) The court thereupon ordered the marshal to amend and correct the returns made by him, showing service on the Lamar-Wells Company, by serving subpœna upon J. I. Campbell, a stockholder and director of said company.

### Conclusions of Law.

[1] (a) Service of subpœna and of copy of petition in an involuntary bankruptcy proceeding may be made upon a Sunday.

[2] (b) Service of subpœna and copy of petition in an involuntary bankruptcy proceeding, had upon a stockholder in and director of the alleged bankrupt corporation, is held to constitute service upon and notice to said corporation sufficient to warrant the court in assuming jurisdiction, and to support the ruling of the court in adjudicating said corporation bankrupt, appointing a receiver of its properties, and in referring the matter for administration in

bankruptcy in due course, where it appears that the stockholder and director so served forthwith on the day and date of said service advised the president of the alleged bankrupt corporation of such service, and delivered to said president the papers so served upon him, and where it further appears that the president of the alleged bankrupt corporation was present in the court room in person at the time said bankruptcy matter was called for hearing and said corporation was adjudicated a bankrupt and a receiver appointed to take charge of the property, assets, and business of the bankrupt, and where it further appears that said president of said corporation entered no objection to the actions and rulings of the court, and where it further appears that on a day preceding the hearing in court, at a meeting of the directors and stockholders of the alleged bankrupt corporation, called by order of its president, a motion was made and duly adopted conferring upon said president authority and power to use his best judgment as to the proceedings in involuntary bankruptcy filed against the corporation of which he was president.

[3] (c) Under the seventh and eighth findings of fact above made, Otis Malcolm, the president of the Lamar-Wells Company, is held to have acquiesced in the jurisdiction assumed by the court upon the service had upon J. I. Campbell, and to have exercised his judgment in favor of permitting said corporation to be adjudged bankrupt without contest. Said corporation is now estopped to deny that it was the best judgment of Otis Malcolm, its president, not to resist the bankruptcy proceedings filed against it, but to acquiesce in said corporation being adjudicated bankrupt, and in the appointment of a receiver to take charge of its property, assets, and business.

J. W. Stitt, of Ft. Worth, Tex., for petitioner.
John Davis, of Dallas, Tex., for respondents.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

PER CURIAM. We find no reversible error in the rulings of the court below complained of in this case, and therefore the petition to superintend and revise is denied.

---

LEE LINE STEAMERS v. PAGE.

(Circuit Court of Appeals, Sixth Circuit. November 16, 1916.)

No. 2835.

1. SHIPPING ⬅165—CARRIAGE OF PASSENGERS—DUTY OF CARE.
     While a steamship company is not liable for its failure to land a passenger at a regular stop, to which she had engaged transportation, where because of stress of weather it was dangerous so to do, nevertheless it is the duty of the company to inform the passenger that the boat could not stop at such place, and not to deceive her as to the landing, and thus induce her to debark at a place other than her destination, and, having done so, is liable for damages proximately resulting from its breach of duty.

     [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 534–537; Dec. Dig. ⬅165.]

2. SHIPPING ⬅166(5)—CARRIAGE OF PASSENGERS—PROXIMATE CAUSE.
     Through stress of weather a steamship company was unable to make a landing at a regular stop, which was a passenger's destination, and on making a landing at another point deceived the passenger into debarking there under the belief that it was her destination. The passenger, a woman used to outdoor work, being unable to procure a conveyance, started to walk back to her destination. After traversing about two-thirds of the